**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| NIMA GHARAVI,<br><br>Plaintiff,<br><br>vs.<br><br>ALLYSON SCHWAB,<br><br>Defendant. | CASE NO. 25-cv-2074-LTS-KEM<br><br>**PLAINTIFF NIMA GHARAVI'S RESISTANCE TO DEFENDANT ALLYSON SCHWAB'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. STATEMENT OF ALLEGED FACTS .......... 2
III. LEGAL STANDARD .......... 3
IV. ARGUMENT .......... 3
A. Plaintiff has Adequately Stated a Cause of Action for Defamation Per Se, Defamation Per Quod, and Invasion of Privacy by False Light. .......... 3
1. Defamation Per Se .......... 3
2. Defamation Per Quod .......... 6
3. Invasion of Privacy by False Light .......... 7
B. Schwab's Defamatory Statements Are Not Opinions. .......... 8
1. Schwab's Statements Are Actionable Assertions of Fact, Not Protected Opinions. .......... 8
2. Schwab's Posts are "of and concerning" Plaintiff. .......... 10
3. Schwab's Cited Authority Either Supports Liability or is Distinguishable. .......... 11
C. The "Sting" of Defendant's Posts is Not Substantially True. .......... 12
D. Plaintiff Adequately Pled Damages Required for Defamation Per Quod and Tortious Interferences with a Business Relationship. .......... 14
1. Defamation Per Quod (Count II). .......... 14
2. Tortious Interference with Prospective Business Relationships (Count V). .......... 14
E. Plaintiff has Properly Pled Intentional Infliction of Emotional Distress (Count IV). .......... 16
F. Plaintiff's Complaint Was Timely As To All Four Posts. .......... 16
V. CONCLUSION .......... 17

## TABLE OF AUTHORITIES

**Cases**

Andrew v. Hamilton County Public Hospital,
960 N.W.2d 481 (Iowa 2021) .......... 11
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3
*Bauer v. Brinkman*,
958 N.W.2d 194 (Iowa 2021) .......... 12
*Becker v. Zellner*,
684 N.E.2d 1378 (Ill. 1997) .......... 7
*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 15
*Brinley Holdings Inc. v. RSH Aviation, Inc.*,
580 F. Supp. 3d 520 (N.D. Ill. 2022) .......... 15
*Bryson v. News Am. Publications, Inc.*,
672 N.E.2d 1207 (Ill. 1996) .......... 4, 6
*Coghlan v. Beck*,
984 N.E.2d 132 (Ill. App. Ct. 2013) .......... 13
*Dobias v. Oak Park & River Forest High Sch. Dist. 200*,
57 N.E.3d 551, 555 (1st. Dist. 2016) .......... 5, 12
*Drake University v. Des Moines Area Community College Foundation*,
2025 WL 1485857 (S.D. Iowa Mar. 14, 2025) .......... 3, 11
*Feltmeier v. Feltmeier*,
207 Ill. 2d 263 (2003) .......... 16
*Gallagher v. City of Clayton,*
699 F.3d 1013 (8th Cir.2012) .......... 3
*Garrett v. Clarke*,
147 F.3d 745 (8th Cir. 1998) .......... 17
*Gharavi et al v. Flosports, Inc. et al*,
No. 1:24-cv-01969 (N.D. Ill. 2024) .......... 16
*Global Relief Foundation, Inc. v. New York Times Co.*,
390 F.3d 973 (7th Cir. 2004) .......... 13
*Green v. Rogers*,
917 N.E.2d 450 (Ill. 2009) .......... 3, 4
*Hadley v. Doe*,
34 N.E.3d 549 (Ill. 2015) .......... 5, 12
*Hemminghaus v. Missouri*,
756 F.3d 1100 (8th Cir. 2014) .......... 11
*Hoffmann v. Clark*,
975 N.W. 2d 656 (Iowa 2022) .......... 14
*Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*,
882 N.E.2d 1011 (Ill. 2008) .......... 8
*Kapotas v. Better Gov't Ass'n*,
30 N.E.3d 572 (Ill. App. Ct. 2015) .......... 4, 6

*Kolegas v. Heftel Broad. Corp.*,
607 N.E.2d 201 (Ill. 1992) .......... 7
*Lyons v. Goodson*,
787 F.2d 411 (8th Cir. 1986) .......... 17
*Mayfield v. Missouri House of Representatives*,
122 F.4th 1046 (8th Cir. 2024) .......... 11
*McFarland v. McFarland*,
684 F. Supp. 2d 1073 (N.D. Iowa 2010) .......... 15
*Minten v. Weber*,
832 F. Supp. 2d 1007 (N.D. Iowa 2011) .......... 11
*Rivera v. Allstate Insurance* Company,
140 F.Supp.3d 722 (N.D. Ill. 2015) .......... 10
*Schuholz v. McFadden*,
230 F. App'x 637 (8th Cir. 2007) .......... 17
*Smithrud v. City of St. Paul*,
746 F.3d 391 (8th Cir. 2014)) .......... 3
*Solaia Technology, LLC v. Specialty Publishing Co.,*
852 N.E.2d 825 (Ill. 2006) .......... 8
*Stults v. Symrise, Inc.*,
989 F. Supp. 2d 735 (N.D. Iowa 2013) .......... 3
*Veasley v. CRST Int'l, Inc.*,
553 N.W.2d 896 (Iowa 1996) .......... 3
*Yeftich v. Navistar, Inc.*,
722 F.3d 911 (7th Cir. 2013) .......... 3

**Rules**

Fed. R. Civ. P. 3 .......... 17
Fed. R. Civ. P. 5(d)(2)(A) .......... 17
Fed. R. Civ. P. 12(b)(6) .......... 3

**Statutes**

735 ILCS 5/13-217 .......... 17

Plaintiff Nima Gharavi hereby submits this Resistance to Defendant Allyson Schwab's Motion to Dismiss. Doc. 13.

## I. INTRODUCTION

Defendant Allyson Schwab's motion to dismiss fails at the threshold and at every point thereafter. She first argues that her social media posts were pure protected opinion, yet simultaneously argues that those same posts were substantially true. They were neither. As the Complaint details, Schwab's posts conveyed precise, readily understood, and verifiable factual assertions that Plaintiff intentionally created exploitative content targeting minors and enabled pornographic viewership including: specific view counts, specific thumbnail-selection practices, and specific accusations of intentional misconduct involving minors, and published these defamatory allegations to hundreds of thousands of viewers. Yet the "sting" of Schwab's accusations are false in their entirety.

The remainder of Schwab's arguments fare no better. Her entire public concern framework is drawn from First Amendment public employee retaliation cases that have no application in a private defamation action between two private parties. Her damages arguments misapply Iowa law and ignore that the Complaint identifies specific cancelled contracts, lost revenue streams, and disrupted business relationships—allegations that easily satisfy Rule 8 for both defamation per quod and tortious interference. Her challenge to Plaintiff's intentional-infliction claim disregards the pleaded facts of a multi-platform campaign that triggered threats, doxing, an attempted break-in, and Plaintiff's displacement from his home. Finally, her statute of limitations argument reflects wishful thinking. She ignores Illinois' savings statute and similarly ignores that the complaint was received by the Clerk of Court on December 29, 2025, as confirmed by the Clerk's own stamp on a document already filed in this case. All of Plaintiff's claims against Schwab are

timely. Schwab identifies no meritorious pleading deficiency and relies on legal theories that either contradict each other or misapply Iowa law. Her motion should be denied in its entirety.

## II. STATEMENT OF ALLEGED FACTS

Plaintiff Nima Gharavi is a long-time wrestling official and has officiated hundreds of wrestling matches for established organizations over a period of many years. Doc. 1 ¶¶ 8-9. In addition, he regularly records wrestling matches across the United States and posts high-quality, edited videos of the matches on his popular Midwest Wrestle YouTube channel ("Midwest Wrestle"). *Id.*, ¶¶11-12. Through Plaintiff's diligent monitoring of his videos, Plaintiff has identified websites that have pirated his videos from Midwest Wrestle or otherwise re-posted his videos without his prior knowledge or consent. *Id.*, ¶22. Some of these websites, to Plaintiff's great dismay, contain pornographic material and other offensive content. *Id.*, ¶23. Since identifying this, Plaintiff has worked diligently to remove the videos from third-party websites and protect his video content and the athletes depicted within them. *Id.*, ¶¶ 26-28.

From December 30, 2023 through January 3, 2024, Schwab published and re-posted public social media posts on her X (formerly Twitter) account accusing Plaintiff of posting the YouTube Videos with an inappropriate intent to garner views by using sexually suggestive and/or exploitive thumbnails. *Id.*, ¶30. Her posts were widely viewed and shared within the wrestling community, generating hundreds of thousands of views. *Id.*, ¶35. In addition to her public statements, Schwab engaged in private communications with third parties to encourage and celebrate adverse actions taken against Plaintiff. *Id.*, ¶41. As a direct result of Schwab's conduct, Plaintiff has been asked to stop filming a number of wrestling events, he has been asked to leave these events, and various wrestling organizations have cancelled their contracts with Plaintiff. *Id.*, ¶¶ 49-57. Additionally, because of the inflammatory statements made about him, Plaintiff lives in fear for his safety and is in legitimate danger of physical harm. *Id.*, ¶58.

## III. LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* The Court must accept as true all facts pled and grant all reasonable inferences drawn from the pleadings in favor of the nonmovant. *Yeftich v. Navistar, Inc*., 722 F.3d 911, 915 (7th Cir. 2013); *accord Gallagher v. City of Clayton,* 699 F.3d 1013, 1016 (8th Cir.2012). Further, "when considering a motion to dismiss, the court is limited to the allegations in the complaint and materials embraced by the pleadings." *Drake University v. Des Moines Area Community College Foundation*, 2025 WL 1485857, at *1 (S.D. Iowa Mar. 14, 2025) (citing *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014)).

## IV. ARGUMENT

### A. Plaintiff has Adequately Stated a Cause of Action for Defamation Per Se, Defamation Per Quod, and Invasion of Privacy by False Light.

#### 1. Defamation Per Se

Under Illinois law, defamatory statements are "statement[s] that harm a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009).[1] Under Illinois

[1] Plaintiff contends that Illinois law applies in this matter. In Iowa, choice of law for torts is governed by the Restatement (Second) of Conflict of Laws, with the forum state (Iowa) applying the "most significant relationship" test. *Veasley v. CRST Int'l, Inc*., 553 N.W.2d 896, 897 (Iowa 1996); *Stults v. Symrise, Inc.*, 989 F. Supp. 2d 735 (N.D. Iowa 2013) (rev'd in part on other grounds sub nom); Restatement (Second) of Conflict of Laws § 145. Illinois has the most significant relationship to this action because: (a) Plaintiff is domiciled in Illinois; (b) Plaintiff's reputational

law, statements are considered defamatory *per se* when the defamatory character of the statement is apparent on its face — when the words used are "so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed." *Kapotas v. Better Gov't Ass'n*, 30 N.E.3d 572, 587 (Ill. App. Ct. 2015). Complaints for defamation *per se* do not require the defamatory words be pled in their exact language, but must be pled with sufficient particularity "so as to permit judicial review of [the] defamatory content." *Green,* 917 N.E.2d at 459.

Illinois law categorizes five types of statements as actionable *per se*: (1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business; and (5) words that impute adultery or fornication. *Bryson v. News Am. Publications, Inc.*, 672 N.E.2d 1207, 1214-15 (Ill. 1996).

To state a claim for defamation, Plaintiff must plausibly plead: (1) Schwab made a false statement about Plaintiff; (2) Schwab made an unprivileged publication of that statement to a third party; and (3) that this publication caused damages. *Green,* 917 N.E.2d at 459. Plaintiff has pled just that. Specifically, Plaintiff alleged that over the course of four days, Schwab made the following false statements accusing Plaintiff of intentionally sexualizing minors and facilitating inappropriate viewership. On December 30, 2023, she began her crusade by telling hundreds of thousands of viewers to scrutinize whether a creator's thumbnails were "suggestive," and asked whether "all the frames selected for videos [are] suggestive," and then insinuated that Plaintiff

---

and economic injuries were suffered primarily in Illinois, where Plaintiff resides, conducts business, and maintains his professional relationships within the wrestling community; and (c) for internet defamation claims, there is a presumption that the plaintiff suffers the greatest harm in their state of domicile. *See* Restatement (Second) of Conflict of Laws § 150, cmt. e. As such, Plaintiff cites to Illinois authority throughout this Response. However, even if this Court were to apply Iowa law, the elements for Plaintiff's causes of action are substantially similar in both Illinois and Iowa. Plaintiff cites to Iowa law in the alternative to Illinois law where applicable.

intentionally filmed minors in inappropriate positions. Doc. 1, ¶31. She further suggested that a "jv match" receiving "240k views" signaled misconduct. *Id.* That same day, she posted, "This makes me sick and why I got this convo going. So many parents don't know their kids are on someone's YouTube." *Id.*, ¶32. The next day, she again posted: "Friendly reminder to check if your kids are on a certain YouTube channel. No reason a 46kg youth girls match should have 2.6 million views,"—a description that, as the Complaint alleges, matched only Plaintiff's channel. *Id.*, ¶33. Finally, on January 3, 2024, she published "Here is what I feel bad for ….. The kids that think it's normal to have 400k views on their video from a local youth for hs tournament or that this is how they are getting recruited." *Id.*, ¶34.

Schwab's statements easily satisfy the first prong of Plaintiff's defamation *per se* claim, particularly where Plaintiff has expressly pled that the statements are false in their entirety. *Id.*, ¶38. Moreover, as Schwab accused Plaintiff, a wrestling official, of sexual misconduct involving minor wrestlers, her statements fall squarely within two of the five recognized categories for defamation *per se*: statements that impute the commission of a crime, and statements that prejudice a party in his profession. *See Hadley v. Doe*, 34 N.E.3d 549, 557-60 (Ill. 2015) (denying motion to dismiss where defendant called plaintiff a "Sandusky waiting to be exposed," in reference to the convicted football coach, Jerry Sandusky, and recognizing that the statement imputed the commission of a crime); *see also Dobias v. Oak Park & River Forest High Sch. Dist. 200*, 57 N.E.3d 551, 555, 565-68 (1st. Dist. 2016) (reversing dismissal of defamation claim and holding that defendant's statement that plaintiff, who was a high school coach and teacher, was "rolling around on a bed in a hotel room alone with an athlete," imputed a lack of integrity and prejudiced plaintiff in his profession).

Plaintiff also adequately pled publication. Plaintiff alleged that Schwab's posts were published on her X account and were widely viewed and shared within the wrestling community and generated hundreds of thousands of views. *Id.*, ¶33. Finally, Plaintiff pled detailed and specific damages flowing from Schwab's statements. He alleged nine paragraphs of facts related to the resulting harm, including termination of contracts, lost filming opportunities, public ridicule and harassment, doxing, and even an attempted break-in, among other injuries. *Id.*, ¶¶49-58. These allegations more than satisfy the damages element for defamation *per se* at the pleading stage.

**2. Defamation Per Quod**

In addition to defamation *per se*, Plaintiff has alleged a claim for defamation *per quod* in the alternative.[2] Statements are considered defamation *per quod* if the defamatory character of the statement is not apparent on its face, and extrinsic facts are required to explain its defamatory meaning. *Kapotas*, 30 N.E.3d, at 587. A plaintiff may state a cause of action for statements that do not fall into any of the five categories of defamation *per se* by pleading facts to show that extrinsic circumstances demonstrate an injurious meaning behind the statement. *Bryson*, 672 N.E.2d, at 1221. *Per quod* claims require a proving of special damages to recover. *Id.* at 1215.

As discussed above, Schwab's statements constitute defamation *per se*, but Plaintiff has also adequately pled defamation *per quod*. Plaintiff alleged additional contextual facts that establish the defamatory nature of Schwab's statements. Specifically, Plaintiff alleged Schwab's posts were published within two days of Plaintiff's ejection from the Midlands Championships. Doc. 1, ¶36. Schwab also praised the person that ejected Plaintiff, calling him her "new hero." *Id.*, ¶¶44-45. Finally, Schwab's posts did not exist in isolation. Rather, they ignited a defamation wildfire in which numerous third parties responded to and quoted Schwab's posts, explicitly

[2] *See, e.g. Burlet v. Baldwin*, 452 F. Supp. 3d 801, 813 (N.D. Ill. 2020) (plaintiffs may plead defamation *per quod* in the alternative to *per se*).

naming Plaintiff and continuing to make disparaging comments about him. *Id.*, ¶ 36. Thus, Plaintiff adequately pled extrinsic context demonstrating that Schwab's statements conveyed a defamatory meaning and caused actionable harm.

Moreover, Plaintiff pled specific facts and instances of the damage he suffered as a result of Schwab's posts. Plaintiff alleges he has suffered the loss of opportunities to record new videos for his YouTube channel, by being asked to leave events, cease filming events, and having press credentials revoked during events. Doc. 1, ¶¶ 49-57. The Complaint also identifies named organizations whose contracts were cancelled—IESA, IHSA, and NCAA. *Id.* This is sufficient for defamation *per quod*. *See Becker v. Zellner*, 684 N.E.2d 1378, 1387 (Ill. 1997) (explaining that allegations that the defamatory material "caused or contributed to Plaintiffs losing prospective employment opportunities with respect to the preparation of a civil complaint to be filed in federal court on behalf of [a client]" were sufficient because the allegations alleged that a third party had actually stopped doing business with the plaintiffs.) Therefore, Plaintiff has adequately pled defamation *per quod*.

**3. Invasion of Privacy by False Light**

To show invasion of privacy by false light, Plaintiff must show that (1) he was placed in a false light before the public as a result of the defendants' actions; (2) the false light in which the plaintiffs were placed would be highly offensive to a reasonable person; and (3) the defendants acted with knowledge that the statements were false or with reckless disregard for whether the statements were true or false. *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 209–10 (Ill. 1992). Here, Plaintiff pled (1) that Schwab's statements created an assertion that Plaintiff had been involved in criminal sexual conduct involving minors and that he has been subject to public ridicule, harassment, and threats of physical violence from third parties who believed Schwab's false

accusations; (2) that Schwab's statements accusing Plaintiff of sexual misconduct are highly offensive to a reasonable person; (3) Schwab posted her statements knowledge that they were false or reckless disregard for their falsity. Doc. 1, ¶¶51, 83-86. As such, Plaintiff has adequately pled invasion of privacy by false light.

**B. Schwab's Defamatory Statements Are Not Opinions.**

**1. Schwab's Statements Are Actionable Assertions of Fact, Not Protected Opinions.**

The unambiguous implication of Schwab's statements is that Plaintiff, the only person whose wrestling videos meet the description in the statements, was engaged in misconduct and exploiting children. These statements express objectively verifiable facts about Plaintiff's conduct, his editorial practices, and the nature and source of his viewership. Therefore, Schwab's posts were not expressions of opinion, but instead conveyed provably false assertions of fact. To determine whether a given statement is one of fact or opinion, Illinois courts apply a test which is almost identical to Iowa's: (1) whether the statement has a precise and readily understood meaning, (2) whether the statement is verifiable, and (3) whether the statement's literary or social context signals that it has factual content. *Solaia Technology, LLC v. Specialty Publishing Co.,* 852 N.E.2d 825, 840 (Ill. 2006); *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 882 N.E.2d 1011, 1022 (Ill. 2008). Even statements of insinuation, allusion, irony, or question, may be considered defamatory. *Solaia Technology*, 852 N.E.2d 825, at 840. And even hyperbolic statements may still be considered statements of fact, and not opinion. *Id*.

Here, Schwab's posts are not opinion. First, her posts connote a precise and readily understood meaning. "All you have to do is look at the photos of videos of a creator to understand if it's intentional or not. Are all the frames selected for videos suggestive?" is not indefinite or ambiguous—it asserts a specific and verifiable editorial practice – one involving intentional

misconduct directed at harming minors. The view count references—"2.6 million views" on "a 46kg youth girls match" and "240k views on a jv match"—are equally precise. As noted in the Complaint, Midwest Wrestle was the only YouTube channel with a 46kg youth girls wrestling match at approximately 2.6 million views at the time of the December 31 post. Doc. 1 ¶ 36.

Her remaining statements are also verifiable. Whether Plaintiff intentionally posted his videos to pornographic websites, whether he selected thumbnails to sexualize minors, and whether his view counts were suspicious or abnormal are all matters capable of objective proof or disproof. The Complaint alleges that Plaintiff never posted his videos to pornographic websites, never encouraged anyone to do so, and in fact submitted hundreds of DMCA takedowns to remove unauthorized postings. Doc. 1, ¶¶26-29.

Further, Schwab's posts were broadcast to 377,800 and 261,400 viewers respectively on a public platform. They appeared in the specific professional context of credential-vetting for persons filming minor athletes, immediately following Plaintiff's ejection from a major tournament, directed at a wrestling community that immediately understood the references. Schwab's account bore a blue verified checkmark, which signals to an audience that the poster is a real, identified individual rather than an anonymous commenter—lending an air of authority to her assertions that a reader would have understood as supporting their factual character. The broader social context of viral public posts by a credentialed community insider in a tight-knit professional community weighs in favor of finding factual content, not away from it. Schwab's posts are therefore not protected opinions.

Even if this Court applied Iowa law, the outcome is the same. Plaintiff incorporates by reference Schwab's articulation of Iowa's four-factor framework for distinguishing a statement as fact or opinion. Doc. 13-1 at 7-8. With only modest differences in phrasing, Illinois' criteria mirror

Iowa's test in all material respects. Plaintiff's analysis satisfies each jurisdiction's factors, confirming that Schwab's statements are actionable under either body of law.

**2. Schwab's Posts are "of and concerning" Plaintiff.**

Schwab repeats that she "never named Plaintiff" or "did not single out Plaintiff . . . by name" four times throughout her brief. Doc. 13-1 at 9–10. She cites no authority for the proposition that failure to name defeats identification. Indeed, governing law supports the opposite conclusion. *See Rivera v. Allstate Insurance* Company, 140 F.Supp.3d 722, 729 (N.D. Ill. 2015) ("a federal plaintiff can proceed with a *per se* defamation claim based on a statement that does not directly name her if she can identify enough "similarities" that "a reasonable person in the community [could] believe that [the statement] was intended to ... refer to [her]"). Here, though every single post does not identify Plaintiff by name, it cannot be reasonably interpreted that Schwab is referring to anybody other than Plaintiff. The Complaint alleges that at the time of the December 31 post referencing "a 46kg youth girls match" with "2.6 million views," Midwest Wrestle was the only YouTube channel with such a video at that view count. Doc. 1 ¶ 36. Multiple third parties who read the posts responded by naming Plaintiff and Midwest Wrestle explicitly, confirming that the community understood the reference. *Id.*

Schwab's conduct forecloses any claim that her posts were directed at no one in particular. On January 1, 2024, a third party publicly defended the subject of Schwab's posts—referring only to "his videos," without providing any other identifying information—suggesting the videos contained nothing suspicious and that the rumor may have originated with a competitor. Doc. 1 ¶ 36; Doc. 1-1 (Ex. A) at 11–13. Schwab replied: "Is this a serious take?" *Id.* The pronoun "his," standing alone, was sufficient for Schwab to identify the subject, evaluate a defense of him, and

dismiss it with contempt. This, coupled with the identifying information contained within Schwab's posts, confirms that she targeted Plaintiff.

Schwab's reliance on *Drake University* for the "interpretive leaps" analogy is misplaced. *Drake University*, 2025 WL 1485857. In that case, a plaintiff sued over a private email discussing differences between two schools' logos and asked the court to traverse several inferential steps to reach a defamatory meaning entirely absent from the text. *Id.* at *8. Here, the only connection required between Schwab's posts and Plaintiff is that the only YouTube channel matching Schwab's specific numerical descriptions is Plaintiff's channel—and the Complaint pleads that as a factual allegation the Court must accept.

**3. Schwab's Cited Authority Either Supports Liability or is Distinguishable.**

First, Schwab's cited case, *Andrew v. Hamilton County Public Hospital,* does not advance Schwab's position; if anything, it reinforces Plaintiff's. In *Andrew*, the Iowa Supreme Court held that when statements imply criminal or near-criminal conduct, "that is something that could be proven as a factual matter and it is not an indefinite or ambiguous statement," because such accusations are by their nature specific and verifiable. 960 N.W.2d 481, 492 (Iowa 2021). Schwab's posts imply that Plaintiff deliberately facilitated the sexual exploitation of the minor athletes he filmed—an imputation of criminal conduct that is both specific and susceptible of proof or disproof, and that falls squarely within the category *Andrew* identifies as falling outside opinion protection.

Second, the threshold predicate of Schwab's opinion defense is that her posts pertained to a matter of "public concern." For this proposition, she cites *Hemminghaus v. Missouri*, 756 F.3d 1100, 1111 (8th Cir. 2014), *Minten v. Weber*, 832 F. Supp. 2d 1007, 1019 (N.D. Iowa 2011), and *Mayfield v. Missouri House of Representatives*, 122 F.4th 1046, 1053–54 (8th Cir. 2024). Doc. 13-

1 at 7–8, 10. Each is a First Amendment public employee retaliation case applying the *Pickering*/*Connick* balancing test—a constitutional framework governing when a public employer may discipline an employee for speech. None of these cases apply, analyze, or purport to govern a "public concern" standard in a private defamation action between two private parties. Schwab's attempt to import the "public concern" doctrine applicable to employment law in place of established defamation doctrine is improper. Indeed, accusations of sexual misconduct toward minors is inherently a matter of public concern, yet such accusations are found to constitute defamation. *See Hadley*, 34 N.E.3d, at 557-60; *see also Dobias,* 57 N.E.3d, at 555, 565-68.

Third, Schwab relies on *Bauer v. Brinkman* as the governing factual analogue, but at least two independent distinctions defeat that reliance. First, *Bauer* was decided on summary judgment after a complete evidentiary record was developed. 958 N.W.2d 194, 202 (Iowa 2021). Second, the Court held that there were no facts in the record supporting a finding that a reasonable reader would understand the accusation that the plaintiff was a "slumlord" to be a statement of fact. *Id.* at 201. Unlike the post at issue in *Bauer*, where there was no discussion of the apartment conditions or factual detail regarding how the apartments were maintained, the posts here provided considerable detail about what the Plaintiff had done constituting sexual misconduct toward minors, including posting suggestive thumbnails and what signals such misconduct. Moreover, as noted above, sexual misconduct toward minors is a verifiable allegation in ways that the pejorative title of slumlord is not.

**C. The "Sting" of Defendant's Posts is Not Substantially True.**

Schwab argues that her statements are not defamatory because they are "substantially true." Not only is this false but even if this Court were to consider this argument, it creates a question of fact for the jury, and Plaintiff's defamation claims could not be disposed of on a motion to

dismiss. *See Coghlan v. Beck*, 984 N.E.2d 132, 146 (Ill. App. Ct. 2013) (determining "substantial truth" is a question for the jury). This raises fact issues and is not appropriate grounds for a motion to dismiss.

Even if the Court wishes to entertain this argument, Schwab's statements are false and are therefore actionable. Under Illinois defamation law, when the "gist" or "sting" of a statement is false, the statement will be defamatory even if the inoffensive, immaterial details to the statement are true. *Global Relief Foundation, Inc. v. New York Times Co.*, 390 F.3d 973, 986-87 (7th Cir. 2004) (applying Illinois law). Here, the sting of Defendant's posts is not that videos appeared on pornographic websites—a fact attributable to third-party pirates acting without Plaintiff's knowledge or consent. The true sting is that Plaintiff intentionally created exploitative content targeting minor children, deliberately enabled pornographic viewership, and warranted credential revocation as a danger to the minors he filmed. Doc. 1 ¶¶ 37–38. That accusation is false in its entirety.

Schwab seizes on Paragraph 26 of the Complaint—which alleges that Plaintiff submitted approximately 325 DMCA takedown requests to "various websites, including websites containing pornographic and offensive content," Doc. 1 ¶ 26—as purported evidence of substantial truth. Doc. 13-1 at 12. Defendant's argument inverts the meaning of this allegation entirely. A person who submits hundreds of takedown requests to combat unauthorized third-party use of his content is *actively resisting* the very problem Schwab claims he was enabling. Taken in any reasonable light, and especially in the light most favorable to Plaintiff, this allegation shows that contrary to Schwab's allegations, Plaintiff was not taking videos to disseminate on pornographic websites.

Further, Schwab cannot claim her posts were pure opinion containing no verifiable facts and, in the same brief, invoke a defense that exists only to protect true factual statements.

Substantial truth is a fact defense to false factual statements. Opinion protection applies to statements with no provably false factual connotation. A statement cannot simultaneously be immune from defamation liability because it contains no verifiable facts and be substantially true because those facts are accurate. By invoking both defenses, Schwab has conceded that her posts carried verifiable factual content—the very concession that defeats the opinion defense—while failing to establish that the actual sting of those posts is true. Her argument fails.

**D. Plaintiff Adequately Pled Damages Required for Defamation Per Quod and Tortious Interferences with a Business Relationship.**

**1. Defamation Per Quod (Count II).**

Plaintiff's allegations of damages in his defamation *per quod* claim are sufficiently pled. Plaintiff incorporates by reference Section A.2. above. At the pleading stage, Plaintiff's allegations of pecuniary loss are sufficient to withstand a 12(b)(6) motion.

Defendant's argument misapplies *Hoffmann* in two independent respects. First, *Hoffmann*'s lost-profits standard is a damages-measurement rule applied on *remittitur* following a full jury trial—not a 12(b)(6) pleading requirement. *Hoffmann v. Clark*, 975 N.W. 2d 656, 663 (Iowa 2022). The *Hoffmann* court was evaluating whether a $4.1 million jury award was excessive, not whether a complaint adequately pled economic harm. *Id.* at 663, 666. Second, *Hoffmann* was a defamation *per se* case. *Id.* at 663. Its discussion of special damages addressed what a *per se* plaintiff must prove to recover special damages beyond presumed general damages—not what a *per quod* plaintiff must allege to survive dismissal. *Id.* at 664-65. For both reasons, *Hoffmann* provides no support for dismissing a well-pled *per quod* claim under Rule 12(b)(6).

**2. Tortious Interference with Prospective Business Relationships (Count V).**

To state a claim for tortious interference with prospective business relationships (Count V) under Illinois law, Plaintiff must allege: (1) a reasonable expectancy of entering into a valid

business relationship, (2) defendants' knowledge of the expectancy, (3) an intentional and unjustified interference by defendants that induced or caused a breach or termination of the expectancy, and (4) damage resulting from this interference. *See Brinley Holdings Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 556 (N.D. Ill. 2022) (applying Illinois law). Here, Plaintiff alleged (1) reasonable expectations of entering into or continuing valid business relationships through Midwest Wrestle and as a wrestling official; (2) Schwab's knowledge of Plaintiff's work as a wrestling official and as the operator of Midwest Wrestle; (3) Schwab's intentional and unjustifiable interference to prevent Plaintiff's business relationships and opportunities from being fulfilled; and (4) Plaintiff's resulting substantial economic damages as a direct and proximate result of Schwab's interference. Doc. 1, ¶¶ 98-106. Thus, Plaintiff sufficiently alleges these elements, including damages.

The result does not change when applying Iowa law either. Iowa and Illinois have almost identical elements for tortious interference. *See* Doc. 13-1, at 13 for Schwab's articulation of tortious interference with a business relationship under Iowa law citing *McFarland*. *McFarland v. McFarland*, 684 F. Supp. 2d 1073, 1088 (N.D. Iowa 2010). Notably, however, *McFarland* denied the motion to dismiss, holding that under Rule 8 and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff "need only set forth sufficient facts to support plausible claims," without "heightened fact pleading of specifics." *Id.* at 1088–89. The *McFarland* plaintiff alleged lost customers and disrupted business relationships without specifying dollar amounts, and the court found those allegations adequate. *Id.* at 1089. As shown above, Plaintiff's allegations satisfy the pleading standard *McFarland* itself applied. Therefore, Plaintiff's claim survives under both Illinois and Iowa law.

## E. Plaintiff has Properly Pled Intentional Infliction of Emotional Distress (Count IV).

Schwab argues that Plaintiff fails to plead "outrageous" conduct. Outrageous conduct is "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 274 (Ill. 2003). Here, the Complaint alleges a coordinated multi-platform defamation campaign that reached hundreds of thousands of community members, caused the cancellation of named institutional contracts with IESA, IHSA, and the NCAA, generated threats to Plaintiff's physical safety, led to the publication of his home address, precipitated an attempted break-in at his residence, and forced him to flee his home state. Doc. 1 ¶¶ 49–58. These allegations plausibly support a finding of conduct that goes beyond all bounds of decency, which is all that is required at this stage. *See Supra* Section III.

## F. Plaintiff's Complaint Was Timely as to All Four Posts.

Plaintiff's claims are timely under both Illinois and Iowa law. First, known as Illinois' "savings statute," under Illinois law, a plaintiff may refile a claim that has been dismissed due to lack of jurisdiction within one year of the dismissal order or within the remaining period of limitation, whichever is greater. 735 ILCS 5/13-217. Here, Plaintiff originally filed his claims against Schwab in the Northern District of Illinois. *See Gharavi et al v. Flosports, Inc. et al*, No. 1:24-cv-01969 (N.D. Ill. 2024), Doc. 1. Schwab was dismissed due to lack of personal jurisdiction on March 14, 2025. *Id.* at Doc. 81. Therefore, applying Illinois' savings statute, Plaintiff had until March 14, 2026 to re-file his claims against Schwab. His claims are clearly well within the applicable statute of limitations.

Although the analysis can end at Illinois's savings statute, Plaintiff's claims are timely under Iowa law as well. The Eighth Circuit has long held that "for purposes of the statute of limitations, a complaint is 'filed' when it is lodged with the court even though it is technically

deficient under local rules." *Lyons v. Goodson*, 787 F.2d 411, 412 (8th Cir. 1986). This rule rests on Fed. R. Civ. P. 3, which provides that a civil action is commenced by filing a complaint with the court, and Fed. R. Civ. P. 5(d)(2)(A), which defines filing as delivering the complaint to the clerk. *See also Garrett v. Clarke*, 147 F.3d 745, 746 (8th Cir. 1998) ("For purposes of the statute of limitations, the filing of a complaint commences a federal cause of action."). The date a complaint is received by the clerk controls for statute of limitations purposes—not the date it is formally docketed. *See Schuholz v. McFadden*, 230 F. App'x 637, 638 (8th Cir. 2007) (reversing dismissal as time-barred where clerk failed to docket complaint as filed on the date received).

Schwab's statute of limitations argument rests entirely on the docket entry date of December 31, 2025. Doc. 13-1 at 15. That date reflects when the Clerk finished processing the physical submission—not when it arrived. The Clerk of Court stamped the submission "RECEIVED DEC 29 2025" on what is now Doc. 2 at 1. The enclosures list on that same document confirms that the complaint, its exhibits, and the filing fee check were all part of the same physical package. *Id.* at 2. The complaint was therefore filed on December 29, 2025—one full day before Iowa's two-year limitations period expired on December 30, 2025. All four posts are timely.

## V. CONCLUSION

Schwab's motion relies on contradictory defenses and misapplied law, and it ignores the Complaint's specific allegations sufficient for all of Plaintiff's claims, and Plaintiff's timely filing. She offers no grounds for dismissal. The motion should be denied.

Dated: April 27, 2026

Respectfully submitted,

By: */s/ Olivia E. Duggins*
Richard A. Stefani [AT0007583]
GRAY, STEFANI & MITVALSKY, P.L.C. 425 Second Street, S.E., Suite 700 P.O. Box 456 Cedar Rapids, Iowa 52406-0456 Email: rickstefani@gsmlawyers.com Tel.: 319/364-1535

Olivia E. Duggins (*pro hac vice*) [6439003]
SWANSON, MARTIN & BELL, LLP
330 N. Wabash Avenue, Suite 3300
Chicago, Illinois 60611
Phone: (312) 321-9100
oduggins@smbtrials.com

**ATTORNEYS FOR PLAINTIFF NIMA GHARAVI**