**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| NIMA GHARAVI,<br><br>Plaintiff,<br><br>vs.<br><br>ALLYSON SCHWAB,<br><br>Defendant. | No. C25-2074-LTS-KEM<br><br>**MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS** |

## *I. INTRODUCTION*

This case is before me on defendant Allyson Schwab's motion (Doc. 13) to dismiss plaintiff Nima Gharavi's pro se complaint (Doc. 1) for failure to state a claim. Gharavi has filed a resistance (Doc. 17) and Schwab has filed a reply (Doc. 22). Oral argument is not necessary. *See* LR 7(c).

## *II. FACTUAL BACKGROUND*

At this stage of the case, I must accept as true the factual allegations set forth in Gharavi's pro se complaint (Doc. 1). Gharavi is a citizen of Illinois. *Id.* at ¶ 3. He is also an experienced wrestling official who, when not officiating, attends local and regional wrestling matches throughout the United States. *Id.* at ¶¶ 9–10. Gharavi records these matches for his YouTube channel, Midwest Wrestle, where he posts "high-quality" edited videos "to share his passion for the sport" and "to be used for [the] continuous improvement of wrestling officiating." *Id.* at ¶¶ 11–13.

"Especially [because] many of the subjects [in] Gharavi's videos . . . are minors," Gharavi curates the comments section of the videos he posts for inappropriate remarks. *Id.* at ¶ 16. He also tries to diligently protect his videos from unauthorized reproduction. Since May 2021 he has issued approximately 325 claims under the Digital Millennium

Copyright Act (DMCA), 17 U.S.C. § 512, requesting that offending websites take down his videos. *Id.* at ¶ 26. He has further served 11 subpoenas to service providers seeking identifying information of those "pirating" his videos. *Id.* at ¶ 27. However, and without his consent, some of his videos have appeared on websites containing pornographic materials and other offensive content. *Id.* at ¶¶ 22–24.

The problem has attracted negative attention from the wrestling community. For example, on December 29, 2023, Gharavi was shooting a video at the Midlands Championships wrestling tournament at Northwestern University. *Id.* at ¶ 42. Jason Bryant, a wrestling media personality, texted the head wrestling coach at Northwestern University that day, alerting him to Gharavi's presence at the event and encouraging the coach to eject Gharavi. *Id.* The head coach later did. *Id.*

Defendant Schwab is a citizen of Iowa who has accrued a substantial following in the wrestling community. *Id.* at ¶ 4. On December 30, 2023, the day after Gharavi's ejection from Midlands Championships, she publicly posted the following on X (formerly Twitter):

> Ok real talk.
>
> I am a parent. I am also a content creator. I shoot video, photos, ect. [sic]. I understand in our sport some things are going to maybe look a certain way or show in singlets. I crop, I sometimes just don't use a photo as a way to protect the kid. That same pic could be out there 30 other ways, but it's just what I do.
>
> Parents- do yourself a favor. Look at the places your kids pop up on-sites channels- Search them on YouTube. Is the video of the match or your child walking back and forth for a while. Is the image selected for the video suggestive?
>
> This is a real thing in our sport. All you have to do is look at the photos or videos of a creator to understand if it's intentional or not. Are all the frames selected for videos suggestive? Are all the photos of positions you wouldn't see other photographers post? Is there 240k views on a jv match?

> Do your due diligence and research! Also schools/tournament directors have someone check who you're credentialing to photograph these athletes esp minors.

Doc. 1-1 at 3. Others responded to the post sharing their experiences, such as one user saying: "Wow I just searched @YouTube and found my 11 y.o. daughter wrestling is the subject of 16 videos of 1 person. Suggestive, w innuendo. I reported it. But as a well intentioned person, I didn't consider this. Thank you 🙏" *Id.* at 4. Another commented: "There is an online forum community that shares pictures of college wrestlers for nsfw reasons. Someone from that community messaged me attempting to solicit pictures for money. I've seen my teammates and friends posted on there as well." *Id.* Another individual responded: "This is exactly why some of the wrestling sites bother me. Nobody under high school age should be out there this much. It's scary on too many levels." *Id.* at 5.

The same day, Schwab posted a second time:

> This makes me sick and why I got this convo going. So many parents don't know their kids are on someone's YouTube.

*Id.* at 15. On December 31, Schwab continued the conversation with a third post:

> Friendly reminder to check if your kids are on a certain YouTube channel.
>
> No reason a 46kg youth girls match should have 2.6 million views.

*Id.* at 8. In her fourth post days later, Schwab finally wrote:

> Here is what I feel bad for.....
>
> The kids that think it's normal to have 400k views on their video from a local youth or hs tournament or that this is how they are getting recruited.

*Id.* at 10.

These posts garnered attention in the wrestling community. Doc. 1 at ¶ 35. Although no post mentioned Gharavi or his YouTube channel by name, enough

identifying information purportedly tied the two. For example, at the time Schwab made her first post, Midwest Wrestle had 240,000 views on videos recording junior varsity wrestling matches. *Id.* at ¶ 36. At least one commentator related the post to Gharavi by sharing: "My good friend . . . pointed this out to me yesterday. I'm grateful he did. Midwest Wrestling [sic] you tube [sic] has my sons [sic] video (of course in a white singlet) and 21k views? Gtfo, no way these are recruiters or the competition scoping these. I flagged it let's see if YouTube GAF." Doc. 1-1 at 6; *see also* Doc. 1 at ¶ 36 ("Multiple third parties who read [Schwab's] posts responded by explicitly naming . . . Gharavi and Midwest Wrestle."). As to the third post, only Midwest Wrestle had a video of a 46kg youth girls wrestling match that had accumulated approximately 2.6 million views. Doc. 1 at ¶ 36.

In addition to what Schwab has posted publicly, Gharavi alleges that she is working behind the scenes against him. After the Northwestern wrestling coach ejected Gharavi from the Midlands Championships tournament in 2023, Schwab reached out privately to call the coach her "hero." Doc. 1-2 at 5. Gharavi suspects Schwab has made similar private communications that "encourage adverse actions against [him], including credential revocations, ejections from events, and contract terminations." Doc. 1 at ¶ 46.

Gharavi alleges that Schwab's posts have caused him to lose contracts, to be barred from filming wrestling matches and sometimes to be entirely excluded from events. *Id.* at ¶¶ 49–52. He has also been subjected to public ridicule, harassment and physical threats from third-parties based on Schwab's posts. *Id.* at ¶ 53. Gharavi contends that on December 31, 2023, a third party published Gharavi's home address on social media, and on January 2, 2024, someone attempted to break into his home. *Id.* at ¶¶ 54–56. Given the timing, Gharavi ties the break-in to Schwab's postings. *Id.* at ¶ 56–57.

Gharavi's pro se complaint was docketed on December 31, 2025. It asserts claims against Schwab of: (1) defamation per se, (2) defamation per quod, (3) invasion of privacy by false light, (4) intentional infliction of emotional distress and (5) tortious interference with prospective business relationships. Schwab seeks dismissal, contending

that the complaint fails to state a claim upon which relief can be granted and that it is time-barred regarding any claims based on her posts of December 30, 2023.

## *III. MOTION TO DISMISS STANDARDS*

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss a complaint for "fail[ing] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (second alteration in original) (citations omitted).

Courts assess "plausibility" by "draw[ing] on [their own] judicial experience and common sense." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (first alteration in original) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual

allegation." *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010). "The well-pleaded facts alleged in the complaint, not the legal theories of recovery or legal conclusions identified therein, must be viewed to determine whether the pleading party provided the necessary notice and thereby stated a claim in the manner contemplated by the federal rules." *Topichian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Parkhill v. Minn. Mut. Life Ins.*, 286 F.3d 1051, 1057–58 (8th Cir. 2002)). Still, federal courts may dismiss a claim that lacks a cognizable legal theory. *See, e.g.*, *Couzen v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (affirming dismissal when there was no legal basis to support claim).

## *IV. ANALYSIS*

### *A. Choice of Law*

A district court sitting in diversity applies the substantive law of the state in which it sits. *Safeco Ins. Co. of Ill. v. Palazzolo*, 15 F.4th 1204, 1206 (8th Cir. 2021). That includes the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Iowa follows the Restatement (Second) of Conflict of Law's "most significant relationship" method for determining what state's substantive law governs. *Veasley v. CRST Int'l, Inc.*, 553 N.W.2d 896, 897 (Iowa 1996). This approach "appl[ies] the policy of the state with the most interest in the litigants and the outcome of the litigation." *Id.* (quoting *Fuerste v. Bemis*, 156 N.W.2d 831, 834 (Iowa 1968)); *see also* Restatement (Second) of Conflict of L. §§ 6, 145 (Sept. 2025 update) (providing general considerations for determining what state has the most significant relationship). When dealing with aggregate communications (such as social media posts) that implicate defamation or invasion of privacy claims, the likely state substantive law to be used is the state's where the plaintiff was domiciled when the publication occurred, assuming the message was published in the plaintiff's state. *See* Restatement (Second) of Conflict of L. §§ 150, 153.

This case concerns statements allegedly about Gharavi (a citizen of Illinois) that Schwab (a citizen of Iowa) made and published online. The fact that Schwab's posts were aggregate communications tips the scales toward applying Illinois law, where Gharavi was domiciled and, thus, where the postings were likely to have the greatest negative effect. *Cf. Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1014 (D. Idaho 2010). Moreover, the interests each tort is intended to protect (reputation and privacy) make Iowa's interest in the outcome of this case comparatively less. Under these circumstances, I find that Illinois has the most significant relationship to this case and will therefore apply Illinois substantive law to Gharavi's claims.

### *B. Claims*

#### *1. Defamation*

To state a claim for defamation, Gharavi must allege sufficient facts to show that: (1) Schwab made a false statement about him, (2) that was unprivileged and published to third parties and (3) caused damages. *project44, Inc. v. FourKites, Inc.*, 240 N.E.3d 471, 476 (Ill. 2024). "A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006). "Allegedly defamatory statements are actionable either *per se* or *per quod*." *Rivera v. Allstate Ins.*, 189 N.E.3d 982, 992 (Ill. App. Ct. 2021).

##### *a. Defamation Per Se*

A statement is defamatory per se when "its harm is obvious and apparent on its face." *Green v. Rogers*, 917 N.E.2d 450, 491 (Ill. 2009). Illinois recognizes five categories of statements considered defamatory per se:

> (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease;

> (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

*Id.* at 491–92. Statements that fit any of these categories "are thought to be so obviously and materially harmful to the plaintiff" that damages are presumed and need not be pleaded nor proven. *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). But even statements that fit these recognized categories will not be actionable per se if they "may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003) (quoting *Chapski v. Copley Press*, 442 N.E.2d 195, 199 (Ill. 1982)). Context is critical for deciding a statement's susceptibility to an innocent meaning, so courts will neither "strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable" nor "espouse a naïveté unwarranted under the circumstances." *Tuite v. Corbitt*, 866 N.E.2d 114, 123 (Ill. 2006).

For starters, there is a significant issue whether Schwab sufficiently identified Gharavi to fit the per se category. Although she need not explicitly mention Gharavi by name for him to maintain a per se claim, there must be sufficient identifiable details in the statement that a third-party could reasonably understand it to concern him. *Bryson*, 672 N.E.2d at 1218; *Muzikowski*, 322 F.3d at 926; *see also Barry Harlem Corp. v. Kraff*, 652 N.E.2d 1077, 1080 (Ill. App. Ct. 1995) (statements cognizable under defamation per se must "obviously refer to plaintiff that it is injurious on its face"). Here, Gharavi bases his per se claim on the viewership details in Schwab's statements and the commentators who related the posts to his channel. That some third-parties independently connected Gharavi to the post might count for something, but those comments are themselves

extrinsic to Schwab's posts.[1] Nothing about the posts themselves clearly identify that they are about Gharavi, such that the harm to him is obvious on its face. *See, e.g.*, *Benton v. Little League Baseball, Inc.*, 181 N.E.3d 902, 922 (Ill. App. Ct. 2020) (noting that a per se claim would fail because "extrinsic evidence would be needed to prove [the plaintiffs'] identities); *Bd. of Forensic Doc. Exam'rs, Inc. v. A.B.A.*, 287 F. Supp. 3d 726, 734 (N.D. Ill. 2018) (a statement that "[t]here are large numbers of practitioners" who do not meet the minimum training standards was not sufficiently identifiable for a practitioner who fell below the purported standards to bring a per se action).

Even if Schwab sufficiently identified Gharavi, his per se claim still would fail. Gharavi tries to tie that claim to three recognized categories: criminally creating and peddling child pornography; failing to officiate matches with integrity while using his position to create inappropriate content; and statements that prejudiced his professional reputation and work opportunities. Doc. 1 at ¶¶ 66–69. None are reasonable interpretations of Schwab's posts. As for the "words that impute a criminal act" category, pornography is not mentioned nor naturally insinuated from any of Schwab's posts, much less allegations of creating or peddling child pornography. The same is true as to discernable accusations of him failing to officiate with integrity or misusing his position. Indeed, assuming Gharavi was the unnamed subject of Schwab's posts, nothing relates him to being a wrestling official. Nor do the posts contain any clear language besmirching Gharavi's professional reputation. For all of these reasons, Gharavi fails to state a claim against Schwab for defamation per se.

[1] Gharavi later admits that the responses are extrinsic evidence by calling them "extrinsic context" in arguing in support of his per quod claim. *See* Doc. 17 at 6–7. I agree with this characterization.

### *b. Defamation Per Quod*

Statements actionable under defamation per quod can be either (1) a statement that is defamatory on its face but does not fall into one of the recognized defamatory per se categories or (2) a statement whose defamatory character is not readily apparent and requires extrinsic circumstances to demonstrate the injurious meaning. *Id.* at 1221. In any per quod action, special damages must be pleaded and proven. *Bryson*, 672 N.E.2d at 1221; *D'Ambrosio v. Meta Platforms Inc.*, 176 F.4th 928, 943 (7th Cir. 2026).

Gharavi alleges extrinsic context that makes it plausible that a reasonable third-party could identify him as the subject of Schwab's posts. Schwab's cautioning against "a *certain* YouTube channel" implies that she had only one in mind. According to Gharavi's complaint, Midwest Wrestle is the only YouTube channel to meet the description of 2.6 million views of a 46kg youth girls' match. Additionally, other viewership metrics that Schwab mentions, such as 240,000 viewers of a junior varsity wrestling match, raise the chances that a third-party associated Gharavi to the posts. As such, although Gharavi is not sufficiently identified in his per se claim, I find it enough to sustain his per quod action at the pleading stage.

Gharavi has also adequately pleaded special damages. Illinois law requires that defamatory per quod statements caused "actual damage of a pecuniary nature" to be actionable. *Bryson*, 672 N.E.2d at 1214; *accord D'Ambrosio v. Meta Platforms Inc.*, 176 F.4th 928, 943 (7th Cir. 2026). The pecuniary loss must be "specifically stated" according to Federal Rule of Civil Procedure 9(g), such that it forewarns the defendant what damages allegedly resulted from their statement. *See Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 922 n.10 (8th Cir. 2004). As such, generalized claims of emotional distress, reputational harm or the loss of professional opportunities do not state a per quod claim. *D'Ambrosio*, 176 F.4th at 943. Many of Gharavi's purported damages are just that: generalized. What stands out, however, is his allegation that "[o]rganizations including [the Illinois Elementary School Association, Illinois High School Association and National Collegiate Athletic Association] have cancelled or declined to renew

contracts with [him] based on [Schwab]'s false accusations." Doc. 1 at ¶ 51. Courts have accepted allegations that have "identified specific business opportunities that had been available to him earlier but that, following the defendant's statements, were available no more," while noting that the correlation-versus-causation front would need to be developed more in discovery.[2] *See Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013). I agree, and find that Gharavi's per quod claim sufficiently alleges special damages.

The difficulty for Gharavi comes down to whether Schwab's posts are fact or opinion. Expressions of opinion relating to matters of public concern receive full constitutional protection and cannot sustain a defamation claim. *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990). On the other hand, false factual statements are actionable. Whether a given statement is one of fact or opinion turns on "whether the statement is factual and provable." *Toney v. WCCO Television, Midwest Cable & Satellite, Inc.*, 85 F.3d 383, 386 (8th Cir. 1996). Illinois courts have identified three considerations: "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." *Solaia Tech.*, 852 N.E.2d at 384.

On their face, Schwab's posts appear to offer her opinions on what visual media is being published by others covering wrestling, informing parents of her attitude and tasking her audience to form a view for themselves and their children. No doubt Schwab's opinion is a negative one. It comes close to being a factual statement when Schwab frames Gharavi as intentionally selecting "suggestive" photos and videos to publish in the first post, and continues in her second saying it "makes [her] sick." But what makes visual media "suggestive" is subjective and not particularly susceptible to a true-or-false test. *Cf. Hopewell v. Vitullo*, 701 N.E.2d 99, 104 (Ill. App. Ct. 1998)

---

[2] The correlation-versus-causation dichotomy appears particularly salient here when Gharavi admits that his videos were being co-opted by pornographic websites.

("'[I]ncompetent' is an easily understood term, [but] its broad scope renders it lacking the necessary detail for it to have a precise and readily understood meaning."); *Law Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1130 (7th Cir. 2022) ("terrible experience," "awful customer service" and "don't waste your money" are matters of opinion in part because there are "numerous reasons why someone may have had a 'terrible experience' or suggest that a product or service would be a 'waste of money'"). It is also worth considering the nature of social media, and its "susceptib[ility] to hosting statements of hyperbole, exaggeration, and rhetoric that were never intended to be assertions of fact," does not invite third-parties to accept opinions—even behind the imprimatur of authority—as fact. *Cf. Hadley v. Doe*, 12 N.E.3d 75, 88 (Ill. App. Ct. 2014). In all, the "sting" or "gist" of Schwab's posts are her opinions that are not actionable under defamation law.

Perhaps fearing this conclusion, Gharavi leans on the aspect of the posts that is a verifiable fact: the viewership numbers. Whether Gharavi had 2.6 million views of a 46-kilogram youth girls match, or 240 thousand views of a junior varsity match, can be provably true or false. But while those aspects are factual, they are not intrinsically defamatory. Nor are they what Gharavi takes offense to. Instead, Gharavi's claim focuses on Schwab's disapproval of his editorial choices that she labels "suggestive." The peppering of facts alongside that opinion does not render the opinion portion anything else. *See Hadley*, 12 N.E.3d at 91 (an expression of opinion couched on some nondefamatory fact is not itself defamatory, "no matter how unjustified and unreasonable the opinion may be or how derogatory it is" (quoting Restatement (Second) of Torts § 566 cmt. c (A.L.I. 1977)). Removing Schwab's opinion from her posts takes with it the objectionable content, as the factual aspects of the posts, left alone, are not defamatory.

Otherwise, Gharavi again tries to impute allegations of peddling child pornography into Schwab's posts, claiming that Schwab's language impliedly charged him with intentionally creating exploitative content of children for others to co-opt. In this context, I can consider that Gharavi's YouTube videos were being non-consensually hosted on

third-party websites containing pornographic or offensive content. But I cannot take the illogical leaps that Gharavi seems to make to read in an accusation that he was creating child pornography. Schwab unquestionably believed that the videos were harmful. However, nowhere is child pornography explicitly mentioned or impliedly inferred. Her references to YouTube seemingly confirm the opposite, that Schwab was focused on what was being hosted to YouTube and not third-party websites. Indeed, her fourth post offers a glimpse into her perception of the harm facing children: that large viewership numbers warp the children's sense of normalcy and "how they are [to get] recruited."

Even accepting Gharavi's allegations as true, the allegedly-defamatory content of Schwab's posts are expressions of opinion, not statements of fact. Gharavi has failed to state a claim against Schwab for defamation per quod.

### *2. False Light Invasion of Privacy*

To plead a false light invasion of privacy claim, Gharavi "must show that the publicity at issue is 'of and concerning' him, that it placed him before the public in a false light, and that there was actual malice." *Muzikowski*, 322 F.3d at 927. It is "closely related to defamation" but covers more conduct as it is meant to "protect[] one's interest in being let alone from offensive publicity." *Schaffer v. Zekman*, 554 N.E.2d 988, 993 (Ill. App. Ct. 1990) (citing *Lovgren v. Citizens First Nat'l Bank of Princeton*, 534 N.E.2d 987, 418–19 (Ill. 1989)). Thus, "it is not necessary that a plaintiff be defamed to support a false-light invasion of privacy claim"; still, "the similarities between these torts" import a similar analysis. *Id.*

As with his defamation claims, Gharavi asserts that Schwab's posts accuse him of "criminal sexual conduct involving minors and pos[ing] an ongoing danger to children." Doc. 1 at ¶ 83. But both facially and with added context, those allegations are not reflected in Schwab's posts. Further, other arguably objectionable content in the posts are opinions that are not amenable to a false light suit. *See Schivarelli v. CBS, Inc.*, 776 N.E.2d 693, 701 (Ill. App. Ct. 2002); *Bd. of Forensic Doc. Exam'rs*, 287 F. Supp. 3d

at 738. Gharavi has failed to state a claim against Schwab for false light invasion of privacy.

### *3. Intentional Infliction of Emotional Distress*

To properly plead intentional infliction of emotional distress, a plaintiff must allege facts establishing that: (1) the defendant's conduct was objectively extreme and outrageous, (2) either intended to inflict severe emotional distress or knew that there was a high probability that her conduct would cause severe emotional distress and (3) the conduct in fact caused severe emotional distress.'" *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016). This is a demanding standard. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing Restatement (Second) of Torts § 46 cmt. d (A.L.I. 1965)); *accord Lewis v. Sch. Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008).

Gharavi alleges that Schwab publicly and privately worked to convince others that he was "actively posting or encouraging others to post his videos to pornographic websites, and that [he] poses a danger to minors." Doc. 1 at ¶ 90. As a result, he has "experienced severe fear for his physical safety and . . . been forced to flee his home due to an attempted break-in that occurred shortly after his personal information was published online in connection with [Schwab]'s false accusations." *Id.* at ¶¶ 94–95.

I agree with Gharavi that public accusations that he engaged in the production of child pornography could amount to extreme and outrageous conduct. *Cf. Costa v. Ramaiah*, 689 F. Supp. 3d 553, 592 (N.D. Ill. 2023); *Brown v. Kouretsos*, No. 15-cv-11076, 2016 WL 3269000, at *5 (N.D. Ill. June 15, 2016). But Schwab's public posts make no such assertions. As for private messaging, Gharavi refers to Schwab labeling the wrestling coach as her "hero" after he had ejected Gharavi from the Midlands Championships tournament in 2023. This comment is far removed from conduct that

was objectively extreme and outrageous. Nor did the comment amount to the solicitation of others to act extremely and outrageously, as Gharavi seemingly portrays it. Gharavi has failed to state a claim against Schwab for intentional infliction of emotional distress.

#### *4. Tortious Inference with Prospective Business Relationships*

Under Illinois law, tortious interference with prospective business relationships requires a plaintiff to "allege (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Foster v. Principal Life Ins.*, 806 F.3d 967, 971 (7th Cir. 2015) (citing *Voyles v. Sandia Mortg. Co.*, 751 N.E.2d 1126, 1133 (Ill. 2001)). Something more concrete than a mere hope is required to establish a reasonable expectation of entering into a future contract. *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996). In any event, the focus is on the conduct of the party interfering with the expectation, requiring some impropriety in the interference. *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 371 (Ill. 1998).

In Gharavi's telling, before the controversy, he had "advertising, revenue, sponsorship[] and partnership[]" contracts with wrestling organizations through Midwest Wrestle and himself had contracts to officiate wrestling events. Doc. 1 at ¶¶ 98–99. Schwab knew about these opportunities and how Gharavi's reputation was integral to maintaining and growing them; by publishing her statements online she intentionally interfered with said business prospects. This was accomplished through improper means because the statements were "false and defamatory[,] . . . made with actual malice." *Id.* at ¶ 105. Consequently, Gharavi lost future contracts that he otherwise had a reasonable expectation of obtaining.

Gharavi's pleading this claim echoes similar theories that have been accepted by courts. *See, e.g.*, *Conditional Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp.

2d 704, 712 (N.D. Ill. 2006) ("lax standards" in pleadings allowed tortious interference claim to continue based allegation he "had a reasonable expectation of . . . entering into valid business relationships [due to his] outstanding interstate reputation . . . lead[ing] him to believe that he was to continue his work with those individuals"). However, Gharavi's struggle comes in how he pleaded the third element: the intentional and unjustifiable interference that induced the cancellation of prospective business. According to Gharavi, Schwab's alleged impropriety is her "false and defamatory statements." As discussed above, nothing in Schwab's statements can accurately be labelled as false or defamatory, much less made with actual malice. Schwab did not act improperly when sharing her opinion on an issue that she finds important. As such, Gharavi has failed to state a claim against Schwab for tortious interference with prospective business relationships.

### *C. Statutes of Limitation*

Separate from the above analysis, Schwab also raises a statute of limitation defense. Iowa law establishes the governing timeframes for timely filing a lawsuit. *See Highland Indus. Park, Inc. v. BEI Def. Sys. Co.*, 357 F.3d 794, 796 (8th Cir. 2004) (court sitting in diversity applies forum state's law for statutes of limitation issue); *Cameron v. Hardisty*, 407 N.W.2d 595, 596 (Iowa 1987) (Iowa applies its statutes of limitation to claims regardless of what state's substantive law governs, with two exceptions inapplicable here). In Iowa, a litigant has two years from when the action accrued to commence defamation, false light or intentional infliction of emotional distress claims. *See* Iowa Code § 614.1(2) (2026).

Gharavi has narrowly done so. Under both Iowa law and the Federal Rules of Civil Procedure, an action commences upon its filing and a filing occurs when it is delivered to, or received by, the court. *Davis v. State*, 35 N.W.3d 127, 130–31 (Iowa 2026); Fed. R. Civ. P. 3, 5(d)(2). Although the complaint was docketed on December 31, 2026, two years and one day after Schwab's first posts, the clerk's office stamped

the complaint as received on December 29, 2025. *See* Doc. 2. That makes December 29, 2025, the dispositive day for statute of limitations purposes, coming in just under the two-year statute of limitations for Gharavi to bring part of his claim. Thus, while all of Gharavi's claims must be dismissed for failure to state a claim upon which relief may be granted, they are not untimely.[3]

## ***V. CONCLUSION***

For the reasons set forth herein, defendant Allyson Schwab's motion (Doc. 13) to dismiss for failure to state a claim is **granted** and this case is hereby **dismissed**.

**IT IS SO ORDERED** this 2nd day of October, 2026.

Leonard T. Strand
United States District Judge

[3] For this reason, I need not rule on the applicability of Iowa's saving statute.